# Kilgore *versus* The Commonwealth.

1. The Act of April 3d 1872 provided that tavern licenses in Allegheny county should be issued by the treasurer of said county. Certain fees were named in the act, and a subsequent section provided that " one-fourth of all such sums received by the treasurer as aforementioned" should be paid to the state, and the other three-fourths to the use of the county. By the Act of April 12th 1875, it was provided " that licenses for sales of liquors, when not otherwise provided for by special law, may be granted by the Court of Quarter Sessions of the proper county." This act also fixed the fees, which were all made payable to the Commonwealth, and the rates were less than those contained in the Act of 1872. The Act of 1875 repealed no act specifically, except the Act of March 27th 1872, which was known as the " Local Option Law." During the years 1875 and 1876, the treasurer of Allegheny county issued the tavern licenses as under the Act of 1872, but collected the fees at the rates fixed by the Act of 1875. In the settlement of his accounts, the accounting officers of the Commonwealth charged him with all the fees received during these years. On an appeal therefrom, *Held*, that the Act of April 3d 1872 was not in any respect repealed by the Act of 1875. *Held, further*, that the fees having been collected in pursuance of the rates fixed by the Act of 1875, the provisions of the Act of 1872 that three-fourths of the fees should go to the county of Allegheny, did not apply, and that they were all payable to the Commonwealth.

2. The Court of Common Pleas of Allegheny county, at the instance of the county of Allegheny, issued an injunction enjoining the county treasurer not to pay, and restraining the state treasurer from collecting said fees: *Held*, that the court had no jurisdiction, and that these proceedings were no bar to the action of the state officers in this case.

May 21st 1880. Before Mercur, Gordon, Paxson, Trunkey, Sterrett and Green, JJ. Sharswood, C. J., absent.

Error to the Court of Common Pleas of *Dauphin county:* Of May Term 1879, Nos. 16 and 17.

These were appeals taken May 26th 1876, by Samuel Kilgore, treasurer of the county of Allegheny, from the settlement of his account as such county treasurer, by the auditor general and state treasurer of the Commonwealth, to the Court of Common Pleas of Dauphin county. By agreement filed in the cases, after issue joined, the parties thereto dispensed with trial by jury and submitted the decision of the cases to the court, subject, nevertheless, to review by writ of error, as prescribed by the Act of April 22d 1874, Pamph. L. 109.

It appeared that Kilgore was treasurer of Allegheny county during the years 1875 and 1876, and in that capacity issued all the tavern licenses, and collected the fees therefor. The Act of April 3d 1872, Pamph. L. 843, entitled An Act to regulate the sale of intoxicating liquors in the county of Allegheny, repealed all the laws relating to the sale of liquor in said county, except certain special laws prohibiting sales in boroughs or townships, and provided that no sales of liquor should be lawful unless made in the manner thereinafter provided. The second section authorized the treasurer of said county, upon payment to him of the

license fees, and the receipt of a bond, to grant licenses. The third section provided in what quantities liquor should be sold, and prohibited its sale in places of amusement. The fourth section classified distilleries and breweries. The fifth section classified the vendors, and fixed the amount of the license for each class, and the sixth section did the same for hotels and taverns. The seventh section was as follows: " The one-fourth of all such sums received by the treasurer as aforementioned, for licenses, to·be for the use of the state, to meet the demands on the state treasury; and the other three-fourths for the use of said county, in meeting the expenses incident to the granting of licenses, and in building, erecting and completing the Allegheny county workhouse, in said county, and for enlarging, improving, maintaining and keeping the same in repair."

Sect. 2 of the Act of April 12th 1875, Pamph. L. 40, provides, " That licenses for sales of liquors, when not otherwise provided for by special law, may be granted by the Court of Quarter Sessions of the proper county, at the first or second session in each year, and shall be for one year."

By the third section of the same act the license fees were made considerably larger than those theretofore charged throughout the state, but less than those paid in Allegheny county under the provisions of the Act of 1872. The Act of 1875 also made the fees payable to the use of the state. The third section also contained this proviso : " Provided, that no license shall be less than $50 ; and provided further, that any person licensed the present or any portion of a year, shall pay a *pro rata* share of the license fee, and the authority granting the license shall designate the classification for that year."

Kilgore continued to issue licenses after the passage of the Act of 1875, and after January 3d 1875, the fees charged were those fixed by said Act of 1875. In the settlement made by the accounting officers of the Commonwealth, he was charged with the whole amount of the fees received from tavern licenses. He objected, alleging that he should have been allowed a credit for a portion of the same as due the county of Allegheny.

The defendant offered in evidence the exemplification of the record of a suit in equity in the Court of Common Pleas of Allegheny county, wherein the county of Allegheny was plaintiff, and the treasurer of Allegheny and the treasurer of the state defendants. The bill was filed September 10th 1875, and an injunction was granted commanding Kilgore, as treasurer of Allegheny county. to hold three-fourths of all sums received by him as tavern licenses for the use of the county of Allegheny, to be applied as directed by the Act of April 3d 1872, and enjoining the state treasurer from receiving the same, and not to institute suit against said Kilgore to enforce payment of the same. The attorney-general, for the

[Kilgore *v.* Commonwealth.]

Commonwealth objected to the admission of this exemplification in evidence, inter alia, on the ground that "the courts of Allegheny county had no jurisdiction in the case, or authority to enjoin the state treasurer or county treasurer from paying or receiving the money claimed by the Commonwealth."

The record was received in evidence by the court, without prejudice to either party, the effect thereof to be determined in the final decision.

The court found there was due the Commonwealth on the first appeal $65,362.52, being the whole net amount received by defendant from January 3d 1875 to December 1875, for tavern licenses, with interest less a credit of one-fourth of the whole amount collected which had been already paid. In the second appeal, there was found due the sum of $65,841.09, which was calculated on the same basis. The defendant excepted to the findings of facts, and the conclusions of law which exceptions the court overruled. Pearson, P. J., filing the following opinion :—

"There is no dispute as to the facts in this case, but the defendant contends that the price or rate of license for inns or taverns, in Allegheny county, is changed by the third section of the Act of 1875, but that no other provision of the Act of 1872 is altered or repealed. After the most careful examination, I am clearly of the opinion that the Act of 1875 does not, in any particular, alter or change that of 1872. There is no clause or provision in it which has any bearing on the earlier statute. The Act of 1872 was intended as a full and perfect provision as to most of the state taxes in Allegheny county, the subjects of taxation, and the rate of assessment, and, where the object was omitted, it would have to be taxed and rated, for state purposes, under the general laws. It is contended that, under the provisos in the third section of the Act of 1875, the tax on inns and taverns was changed in that county. There is nothing in the provisos that even hints such a change. On the contrary, the whole of the Act of 1875 leaves in full force all special statutes. We may take it as a legal axiom that statute laws are not to be repealed by implication. To have that effect, there must be a strong repugnancy between them : The King *v.* Justices of Middlesex, 6 M. & S. 279. There must be an irreconcilable inconsistency : Bank *v.* Commonwealth, 10 Barr 448. A general law will seldom repeal a special one : Dyer *v.* Covington Twp., 4 Casey 186. A general statute, without negative words, will not repeal a previous one which is particular, though there be some inconsistency between them : Brown *v.* Commissioners, 9 Harris 37. Later statutes, which are general, do not repeal an earlier one which is particular : Bounty Accounts, 20 P. F. Smith 96 ; which cites very many of the English cases. Implied repeals are not favored : Erie *v.* Bootz, 22 Id. 199. And there must be so strong an inconsistency that they cannot stand together :

13 Norris—32

Egypt Street, 2 Grant 455. The law never favors repeals by implication : Shinn *v.* Commonwealth, 3 Id. 205 ; Bowen *v.* Lease, 5 Hill (N. Y.) 221. Such is the language of all the cases and text writers. We would say that these rules were universal, but for two of our own decisions under the tax laws of the state, where the principle was disregarded : Iron City Bank *v.* Pittsburgh, 1 Wright 340. This bank was, by the terms of its charter, exempted from taxation for a certain period ; yet a general law was held to embrace it, which taxed the Pittsburgh banks. The other is the case of the Commonwealth *v.* Fayette County Railroad, 5 P. F. Smith 452, which had a special exemption until the earnings would pay the stockholders six per cent. on their investment ; yet, as the corporation was created subject to the Act of 1849, it was held to be embraced in a general law taxing railroad companies on their dividends. No one doubts the power of the legislature to impose the tax, notwithstanding the exemption clause ; but did it do it by a general law ? We would say that, on general principles, the special exemption was not revoked by implication under a general tax law of railroads. It required some special enactment, pointing to the particular road. We are clearly of the opinion that no part or portion of the special act relating to the taxation of inns and taverns, in the county of Allegheny, is altered or revoked by the Act of 1875. There is no allusion to the Act of 1872, and no inconsistency between the two laws. The error in the present case arises from the county authorities imposing the tax under the Act of 1875, instead of that of 1872. Had they adhered to every portion of that law, they could have successfully claimed to have the money appropriated under the seventh section of the act, which gives one-fourth of the sums received by the treasurer for license to the use of the state, to meet the demands on the state treasury, and three-fourths thereof to the county of Allegheny, to aid in completing the workhouse. By the course pursued, the county of Allegheny wishes to tax under one law, and claim three-fourths of the money raised under another. This we consider inadmissible.

The attorney-general contends that, if the taxes had been assessed under the Act of 1872, the state would have received as much money from its fourth as it can gain by taking the whole under the rate imposed. It is conceded by the defendant's counsel that there is a great difference between the taxes imposed under the two laws. How much, they do not know, and the same is not in proof by either party. If that were known with reasonable certainty, the court could adjust the difficulty with approximate accuracy. Possibly it might have been approached by giving in evidence the sums raised from licenses in 1873 and 1874, but there was no attempt to make the proof, each party relying on the principles of law, and construction of the different statutes for which they contended. The court is obliged to decide the case on the

[Kilgore v. Commonwealth.]

evidence before it. The seventh section of the Act of 1872 we do not consider is repealed, but stands in full force; but the sums received for tavern licenses were either under the Act of 1875, or the general laws of the state, therefore, do not come within either the words or spirit of the act, which says, "the one-fourth of such sums received by the treasurer, as aforementioned, for license, to be for the use of the state," &c. All of the previous sections had fixed the high rates of taxation, as before stated. No part of the money now in controversy was so received, therefore cannot be claimed for Allegheny county; but, being collected from the citizens for tavern licenses, must be distributed and appropriated as in other cases under the general laws. Allegheny county can again collect and receive her three-fourths of the license money for inns and taverns, by making its future assessments and collections under the Act of 1872, unless that law has been repealed.

"The proceedings in equity in Allegheny county are no bar to the action of the state officers in the present case. That court could not, by injunction, prevent the state treasurer from acting with the auditor-general in settling and collecting the money decided by them to be due to the Commonwealth; nor could it even enjoin the treasurer of Allegheny county from paying over money which he had collected for the state. If such a course could lawfully be pursued, the finances of the Commonwealth would be thrown into strange confusion. On the same principle, the treasurer of every county in the state could be prevented by the courts from paying any money into the state treasury collected under a law which they choose to consider unjust or unconstitutional. It was intended by the framers of our laws, that all questions affecting the revenue, or claims by or against the Commonwealth, should be first heard by the accounting department under the Act of March 30th 1811, and if the party claimant or defendant against the state was dissatisfied, an appeal was given under the restrictions therein provided. That appeal was to be decided at the seat of government where the public offices were kept, and the state officers could give the business their attention without neglecting their other public duties. They would thus have all of the reports to the departments, papers, books and public documents at one place, where they could be used on the trial without inconvenience or loss of time. It is sufficient for us that such is the settled law, and we consider the bill in equity in the Common Pleas of Allegheny county coram non judice. That court had no jurisdiction in the case, and its pending injunction is a nullity, affords no protection to the county treasurer, and has no binding effect whatever on the state treasurer.

"We will only add to what has been already said, that the 2d section of the Act of 1875, shows clearly that no change was intended in Allegheny county by the two provisos at the end of the

3d section, as it contains a provision exempting cases provided for by special laws, and alludes to the licenses to be granted by the courts at the first and second terms. Those in Allegheny county were, under the Act of 1872, granted by the treasurer at four different periods of the year. There was no intention to make any alteration in Philadelphia or Allegheny county, in any particular, and the Act of 1875 contains no repealing clause."

Kilgore took this writ, and alleged that the court erred, inter alia, as follows:

2. Having found and determined that the Act of April 3d 1872, Pamph. L. 843, is not repealed, "but stands in full force," the court erred in deciding that "the sums received for tavern licenses were either under the Act of 1875, or the general laws of the state, therefore do not come within either the words or spirit of the Act of 1872, which says, ' the one-fourth of such sums received by the treasurer, as aforementioned, for license, to be for the use of the state.'"

3. The court erred in deciding that the money in controversy, having been " collected from the citizens for tavern licenses, must be distributed and appropriated, as in other cases, under the general laws" of the Commonwealth.

4. The court erred in not deciding that the money in controversy, being three-fourths of the sums received by the treasurer of the county of Allegheny for tavern licenses—the other one-fourth having been paid into the state treasury—was, under the Act of April 3d 1872, for the use of the county of Allegheny, and should be appropriated accordingly.

7. The court erred in overruling and disregarding the evidence contained in the exemplification of the record in the proceedings for an injunction.

After argument, the Supreme Court made the following order:

PER CURIAM.—These cases are ordered to be re-argued before a full bench.

Attention to the following questions is requested, in addition to the question referred to in the paper-books:

Is the special Act of 1872, relating to Allegheny county, repealed in whole or in part by the general Act of 1875?

If in part only, does the repeal extend beyond the mere change of the rates of assessment?

Has the treasurer of Allegheny county any power to assess, except under the Act of 1872?

If he has, what law confers and regulates this power.

Has the change of the rate of assessment, in the third section of the Act of 1875, any operation upon the power to assess beyond the rate itself?

*A. M. Brown* and *S. H. Geyer*, for plaintiff in error.—The power of the treasurer of Allegheny county to grant licenses to

keep hotels, inns and taverns, is vested in him under the second section of the Act of 1872, and this power is clearly recognised, as we think we have shown, by the second and third sections of the Act of 1875. If we are correct in our view of the meaning of the second and third sections of the Act of 1875, it then follows that the sixth section of the Act of 1872 is modified or repealed, so far as the classification and rates of assessment therein contained differ with the classification and rates of assessment contained in section third of the Act of 1875.

· It will hardly be contended that the legislature has not the power by general law to change the rate of assessment as established by the sixth section of the Act of 1872; the question here is, has it done so by the passage of the Act of 1875 ? If it has, then it is clear that the treasurer of Allegheny county was bound to respect that change, and to exercise his authority under the Act of 1872, in granting licenses, so as to conform to the change of the rate of assessment, as made by the third section of the Act of 1875.

If, then, the Act of 1875 only changes the Act of 1872, as to classification and rates of assessment of tavern licenses, it seems to us that the treasurer of the county was bound to collect the license fees as fixed by the third section of the Act of 1875, and to appropriate the money so collected, as directed by the seventh section of the Act of 1872, and this he has done.

The Act of 1875 is a general statute to restrain and regulate the sale of liquors, and we contend it repeals all repugnant or inconsistent provisions in the Act of 1872. A special local statute is not repealed by a general law containing no inconsistent provisions : Dyer *v.* Covington Twp., 4 Casey 186 ; but a general law repeals a local or special law so far as the latter is inconsistent with its provisions : Keller *v.* Commissioners, 21 P. F. Smith 413 ; Nasser *v.* Commissioners, 1 Casey 126 ; Bartlet *v.* King, 12 Mass. 545 ; Gwinner *v.* Lehigh & Del. G. Railroad Co., 5 P. F. Smith 126 ; Johnston's Estate, 9 Casey 511 ; Commonwealth *v.* Commissioners of Allegheny, 4 Wright 348 ; Commonwealth *v.* Cross-Cut Railroad Co., 3 P. F. Smith 62 ; Southwark Bank *v.* Commonwealth, 2 Casey 446 ; Norris *v.* Crocker, 13 Howard 429.

If the legislature did not intend that other authority than the Court of Quarter Sessions could grant licenses, as classified and rated by the third section of said act, why was the language " the authority granting the license shall designate the classification for that year" used ? If it had intended to confine the granting of licenses to the Courts of Quarter Sessions in counties where no provision was made by special law for granting them, then the language of the proviso referred to would naturally have been " and the court" (not " the authority") " granting," &c. It is plain that this word "authority" was used for a purpose, and that was to include any person or officer who had power or authority at the

[Kilgore *v.* Commonwealth.]

date of the passage of this Act (1875) by special law to grant licenses as well as to include the Courts of Quarter Sessions.

The Common Pleas of Allegheny county had authority to grant the injunction in the proceeding in equity: Commonwealth *v.* Supervisors, 5 Casey 121; McIntyre *v.* Perkins, 9 Phila. R. 484; Pittsburgh *v.* Kelly, 33 Leg. Int. 118; Cummings *v.* Sheble, 1 Phila. R. 492; Long *v.* Dickinson, 31 Leg. Int. 36; Mott *v.* Pennsylvania Railroad Co., 6 Casey 9.

*Lyman D. Gilbert*, Deputy Attorney-General, and *Henry W. Palmer*, Attorney-General, for the Commonwealth.—The Act of 1875 does not repeal the Act of 1872 in whole or in part, because the Act of 1872 is special and the Act of 1875 is general, making no allusion to special acts except in the second section, by which they are retained in force. It does not repeal the Act of 1872 in whole or in part, because the Act of 1875 contains no repealing clause and no negative words, and cannot, therefore, by implication, repeal a former act, unless there is a strong repugnancy between them.

The Act of 1872 is supplied by the Act of 1875, if affected at all (except so far as saved in the second section, viz.: as to the power of the treasurer to grant licenses). If the Act of 1875 is to be construed as a general act on the subject of granting licenses, introducing a new system, and repealing special acts by implication, then it should have effect in all its parts; and as the money collected under it is in every other instance paid to the state, the licenses from Allegheny should be thus paid.

The change of rate in the Act of 1875 has no effect on the power of the treasurer to assess, whether the rate be changed for Allegheny or not, because the Act of 1875 grants power to the Quarter Sessions to license only "when not otherwise provided by law." The contention on the part of the plaintiff is that the Act of 1872 is in full force, except as to the rate to be paid for licenses in Allegheny county. We think one of two positions must be assumed, either the Act of 1875 supplied the Act of 1872 in all its provisions, save that relating to the authority to grant, which was specifically excepted, or it did not effect it in any way. In either case the money in controversy belongs to the state.

Mr. Justice GORDON delivered the opinion of the court, June 21st 1880.

The Act of April 3d 1872, Pamph. L. 843, is in its terms a special or local act, intended to apply only to the county of Allegheny. The seventh section thereof appropriates, to the use of the state, one-fourth of the license fees by the act authorized, and the balance to the use of the county to be used, after payment of expenses, in building and maintaining a workhouse. The section

[Kilgore *v.* Commonwealth.]

referred to is dependent for its force and efficacy upon the preceding sections; this is obvious from its language which is as follows : " The one-fourth of all such sums received by the treasurer, *as aforementioned,* for license, to be for the use of the state, ·* * * and the other three-fourths for the use of said county." It follows if, as the defendant below contends, the preceding sections are repealed by the Act of 1875, so also must be the seventh section, because the very source from which the county is to get its appropriation is thus cut off. As under this theory the " sums aforesaid" could have no existence, clearly the county could get nothing. If then we concede the defendant's proposition, that is, that the Act of 1872 has been repealed by the Act of 1875, his ground for resisting the claim of the Commonwealth is swept from under him. It is true it is contended that the Act of 1875 repealed that of 1872 only so far as classification and the rates of assessment are concerned, leaving the seventh section of the latter-named act still in force. This, however, is an attempt to engraft, by an unwarranted implication, part of a general act upon one that is purely local, and this anomalous patchwork has for its only object the giving to the county of Allegheny three-fourths of the license fees raised under the Act of 1875. This cannot be; if this county is not so entitled under the Act of 1872, it is not entitled at all, for all such fees raised under the Act of 1875 belong to the state. That act contains in itself a uniform system designed to raise revenue for the use of the Commonwealth, and not for any local purposes whatever, and in it there is not so much as a hint towards the Allegheny act. The claims of Allegheny county for a portion of the funds in the hands of the defendant must, therefore, be regarded as groundless. As these funds, confessedly, were collected under the Act of 1875, they belong to the state, and to the state they must go. As to the remaining and incidental question, we have only to say that neither directly nor by implication does the Act of 1875 repeal that of 1872, and we cannot see how, in view of the multitudinous decisions of this court, directly bearing upon the doctrine here involved, any one could come to a different conclusion. To discuss a point so obvious would be to no purpose, especially in view of what has been so well said upon the subject by the court below.

Judgments affirmed.